UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNETTE MATULA,

                Plaintiff,        Civil Action No. 13-10673
                                        Honorable Robert H. Cleland
                                        Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [9, 12]**

      Plaintiff Annette Matula ("Matula") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [9, 12], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

      For the reasons set forth below, the Court finds that substantial evidence supports the Administrative Law Judge's ("ALJ") conclusion that Matula is not disabled under the Act. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Matula's Motion for Summary Judgment [9] be DENIED, and that, pursuant to sentence four of 42 U.S.C. §405(g), the ALJ's decision be AFFIRMED.

**II.    REPORT**

   **A.    Procedural History**

On December 21, 2009, Matula filed an application for SSI, alleging a disability onset date of January 1, 2007.[1]  (Tr. 126-28).  This application was denied initially on June 1, 2010. (Tr. 84-87).  Matula filed a timely request for an administrative hearing, which was held on August 5, 2011, before ALJ Jeanne VanderHeide.  (Tr. 41-72).  Matula, who was represented by attorney Daniel Pollard, testified at the hearing, as did vocational expert Pauline McEachin. (*Id.*).  On August 26, 2011, the ALJ issued a written decision finding that Matula is not disabled. (Tr. 27-36).  On December 18, 2012, the Appeals Council denied review.  (Tr. 1-6).  Matula filed for judicial review of the final decision on February 18, 2013.  (Doc. #1).

   **B.    Background**

      *1.    Disability Reports*

In an undated disability report, Matula indicated that she was 5'8" tall and weighed 296 pounds.  (Tr. 141).  She further indicated that her ability to work was limited by high cholesterol, back pain, leg weakness, and dizziness.  (*Id.*).  According to Matula, her conditions became severe enough to keep her from working on June 1, 1997.  (Tr. 142).  However, she last worked in June of 1986 and, by her own admission, stopped working to be a stay-at-home wife and mother, not for medical reasons.  (*Id.*).  Matula completed the eleventh grade and attended special education classes.  (*Id.*).  At the time of the report, she was taking various medications for high cholesterol, allergies, and other conditions, but only Motrin for pain.  (Tr. 145).

In a function report dated February 20, 2010, Matula reported that she lives in a house with family.  (Tr. 157).  When asked to describe her daily activities, Matula indicated that she

---

[1] At the administrative hearing, Matula amended her application to reflect an alleged onset date of December 21, 2009.  (Tr. 46).

takes her medications, spends time with her children, talks with family and friends on the phone, does housework, and cares for her cat. (*Id.*). Her conditions affect her sleep, but she has no problem with personal care. (Tr. 158). She is able to prepare meals and do housework on a daily basis, although her children help her when necessary. (Tr. 159). She is able to drive, go grocery shopping (once a month), pay bills, and handle a checking and savings account. (Tr. 160). Her hobbies include doing puzzles and "fill-in books," watching television, and spending time with her children and cat. (Tr. 161). She spends time with others (on the phone and in person), and regularly visits family and friends. (*Id.*).

When asked to identify functions impacted by her condition, Matula checked lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks, and concentration. (Tr. 162). She indicated that she can lift no more than ten pounds and walk less than 1/2 block. (*Id.*).[2]

### 2. *Matula's Testimony*

At the time of the August 5, 2011 hearing before the ALJ, Matula was 46 years old and lived in a house with her 16-year-old son. (Tr. 47-48). She testified that she suffers from sharp low back pain that radiates down her legs to her feet. (Tr. 50, 67). She is supposed to take Motrin four times a day for pain, but she generally takes it only before bed because it "puts [her] to sleep." (Tr. 51). Matula testified that she received steroid injections in her back, which helped until she attempted to shovel snow and re-injured her back. (Tr. 57-58). She uses a cane occasionally, although it was not prescribed by a physician. (Tr. 58). Matula further testified that she was taking fluoxetine for depression, as prescribed by her primary care physician, but was not undergoing counseling or mental health treatment. (Tr. 66).

---

[2] In a third party function report dated February 20, 2010, Matula's mother, Doris McNeil, generally corroborated Matula's allegations. (Tr. 149-56).

3

Matula testified that she earned a high school diploma (attending special education classes). (Tr. 47). She has never worked full-time. (Tr. 50). She attempted to work in a recycling job in 2011, but lasted only 3.5 days because she was "in a lot of pain" and was not permitted to sit down. (Tr. 48-50). She participated in the Work First program (beginning in January of 2010), which involved taking eight-hour classes, searching for jobs, and completing job applications. (Tr. 53-54). Matula further testified that she has difficulty sleeping because of pain, but is able to care for her own personal needs and drive. (Tr. 61-62). She is able to prepare meals, do the dishes (sitting down), clean the house, go grocery shopping, and do laundry (including carrying a basket of clothes). (Tr. 62-63). She enjoys doing puzzles and "fill-in books," playing board games and cards, and caring for her cat. (Tr. 63). She attends two-hour church services on a regular basis. (*Id.*). She is able to play computer games and is learning how to use Microsoft Word. (Tr. 64).

### 3. Medical Evidence

The ALJ found that Matula suffers from the severe impairments of lumbar radiculopathy, degenerative lumbar spine, obesity, and depression.[3] (Tr. 29-30). Medical evidence pertaining to each of these conditions is discussed below.

Between 2009 and 2011, Matula sought treatment for her low back pain from a chiropractor, Dr. J.A. VanHoutteghem, on a fairly regular basis. Dr. VanHoutteghem routinely reported that corrective spinal care was recommended as needed. (*E.g.,* Tr. 240, 244, 256, 264, 281, 428, 454). However, at several of these chiropractic visits, Matula indicated that she had been engaging in more extensive physical activity or was feeling better than one would expect,

---

[3] The ALJ also found that Matula's alleged "learning disorder" does not constitute a severe impairment under the Act. (Tr. 30). Matula has not challenged this conclusion; thus, records pertaining to this condition will not be discussed in detail herein.

4

given her hearing testimony and the statements she made in her disability reports. (*E.g.,* Tr. 258 ("Did some grocery shopping for a friend" on January 4, 2010); 377 ("Riding a bike Saturday" on May 10, 2010); 424 (low back "doing fairly good today" on September 10, 2010); 426 ("Improving" on October 8, 2010); 448 ("Shoveling snow" on February 14, 2011)).

On January 5, 2010, Matula visited her primary care physician, Dr. Jaime Tan, complaining of back pain. (Tr. 204). Dr. Tan ordered x-rays of Matula's lumbar spine and coccyx and advised Matula to lose weight with diet and exercise. (*Id.*). The x-rays of Matula's sacrum and coccyx showed only a mild sclerotic degenerative change at the SI joint in both sides. (Tr. 170). X-rays of her lumbar spine showed degenerative changes of the posterior joints of L4 to S1; however, the alignment, vertebral body height, and disc spaces were normal. (Tr. 171). At her next visit to Dr. Tan, on January 19, 2010, Matula reported that her back pain was "improved," and she was diagnosed with a low back strain and early degenerative osteoarthritis. (Tr. 204).

At her next two visits to Dr. Tan (in April and June of 2010), Matula did not complain of back pain. (Tr. 391-92). However, on August 23, 2010, Matula again saw Dr. Tan, complaining of low back pain and numbness in her feet when she stood for long periods of time. (Tr. 390). Dr. Tan ordered an x-ray of Matula's cervical spine (which was normal) and an MRI of Matula's lumbar spine. (Tr. 390, 401). The August 24, 2010 lumbar spine MRI showed degenerative facet changes at L4-L5 and L5-S1, as well as bulging discs at L4-L5 and L5-S1 with mild to moderate biforaminal narrowing and contact of the L4 and L5 nerve roots within the foramina. (Tr. 404-05). However, the MRI revealed that there was no spinal stenosis. (*Id.*).

On September 8, 2010, Matula was evaluated by Dr. Gerald Schell, a neurosurgeon. (Tr. 383-84). Dr. Schell observed that Matula walked with a mild antalgic gait and seemed to have

some mild diminution in sensation of her lower extremities. (Tr. 383). However, Dr. Schell reported that Matula was neurologically stable and had 5/5 strength in her iliopsoas, quadriceps, dorsiflexion, and plantar flexion of the feet. (*Id.*). Overall, Dr. Schell concluded that Matula did not have "enough of an issue here which would cause a need for surgical intervention" and recommended epidural injections and physical therapy. (*Id.*). Matula did receive three lumbar epidural injections in November and December 2010. (Tr. 430-32). She saw Dr. Tan on several other occasions, in late 2010 and early 2011, sometimes reporting an improvement in her back pain (Tr. 388), other times reporting ongoing symptoms (Tr. 389), and other times not complaining of back pain at all (Tr. 464). On April 21, 2011, Dr. Tan issued a statement indicating that Matula recently had been diagnosed with chronic low back pain, "making it difficult for her to stand for long periods of time." (Tr. 433).

There is very little medical evidence in the record regarding Matula's depression. On April 8, 2010, Matula saw Dr. Tan in follow-up to a recent visit to the emergency room for depression and anxiety. (Tr. 392). Matula reported that there had been three deaths in her family in the past year – including her husband, father, and niece – and that she also was experiencing financial difficulties and problems with her son. (*Id.*). Upon examination, Matula was alert and coherent. (*Id.*). Dr. Tan prescribed Flueoxetine for depression. (*Id.*). There is no evidence in the record that Matula received any other mental health treatment or counseling for depression.

      *4.      Vocational Expert's Testimony*

Pauline McEachin testified as an independent vocational expert ("VE") at the administrative hearing before the ALJ. (Tr. 68-71). First, the VE testified that Matula had no past relevant work. (Tr. 69). Then, the ALJ asked the VE to imagine a claimant of Matula's age, education, and work experience, who could perform simple, unskilled sedentary work, with the

6

following additional limitations: the work must have an option to sit/stand at will, provided that the individual is not off task for more than 10% of the workday; no climbing of ladders, ropes, or scaffolds; and only occasional climbing of ramps and stairs, stooping, crouching, kneeling, and crawling. (Tr. 70). The VE testified that the hypothetical individual would be capable of working as a surveillance system monitor (82,000 jobs nationally), inspector (100,000 jobs), and order clerk (110,000 jobs). (Tr. 70-71).

### C. Framework for Disability Determinations

Under the Act, SSI is available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" in relevant part as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work

experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §§404.1520, 416.920); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Matula is not disabled under the Act. At Step One, the ALJ found that Matula has not engaged in substantial gainful activity since December 21, 2009, her alleged onset date. (Tr. 29). At Step Two, the ALJ found that Matula has the severe impairments of lumbar radiculopathy, degenerative lumbar spine, obesity, and depression. (*Id.*). At Step Three, the ALJ found that Matula's impairments do not meet or medically equal a listed impairment. (Tr. 30-31).

The ALJ then assessed Matula's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: she must be able to alternate between sitting and standing at will (provided that she is not off task for more than 10% of the workday); only occasional stooping, crouching, crawling, kneeling, and climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; and only simple, routine, repetitive tasks. (Tr. 32-35).

At Step Four, the ALJ determined that Matula has no past relevant work. (Tr. 35). At Step Five, the ALJ concluded, based in part on the VE's testimony, that Matula is capable of performing a significant number of jobs that exist in the national economy. (Tr. 35-36). As a result, the ALJ concluded that Matula is not disabled under the Act. (Tr. 36).

**E.     Standard of Review**

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human*

9

*Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted).

> **F.     Analysis**

Matula argues that, in concluding she was capable of performing a significant number of jobs that exist in the national economy, the ALJ failed to adequately assess the credibility of her subjective complaints and to properly evaluate all of the medical evidence submitted. As a result, Matula argues, the ALJ failed to pose a hypothetical question to the VE that adequately took into account all of her limitations. A review of the record and the ALJ's decision, however, makes clear that the ALJ committed no error warranting remand.

> *1.     The ALJ's Credibility Determination is Supported by Substantial Evidence*

As the Sixth Circuit has held, determinations of credibility related to subjective complaints of pain rest with the ALJ because "the ALJ's opportunity to observe the demeanor of the claimant 'is invaluable, and should not be discarded lightly.'" *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524, 538 (6th Cir. 1981) (quoting *Beavers v. Sec'y of Health, Ed. & Welfare*, 577 F.2d 383, 387 (6th Cir. 1978)). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not simply required to accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531

(6th Cir. 1997). Rather, when a complaint of pain is in issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, she must consider "the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of her pain are credible. *Soc. Sec. Rul.* 96-7, 1996 WL 374186, *1 (July 2, 1996); *see also* 20 C.F.R. §416.929.

In this case, after finding at Step Two that Matula has the severe impairments of lumbar radiculopathy, degenerative lumbar spine, obesity, and depression (Tr. 29-30), the ALJ concluded that Matula has the residual functional capacity to perform a significant number of sedentary jobs that exist in the national economy. (Tr. 35-36). In reaching this conclusion, the ALJ specifically referenced Matula's testimony that she suffers from back pain and leg weakness, can lift only ten pounds, and cannot sit for prolonged periods of time without needing to stand up and move around. (Tr. 32-33). However, the ALJ found that while Matula's conditions could reasonably be expected to produce the alleged symptoms, her statements about the intensity, persistence and limiting effects of those symptoms were not entirely credible to the extent they conflicted with the RFC assessment. (Tr. 33). In reaching this conclusion, the ALJ specifically considered Matula's work history, activities of daily living, and the objective medical evidence, as well as observations made at the hearing, and she gave good reasons for discrediting Matula's allegations of work-preclusive limitations. (Tr. 32-35).

In evaluating Matula's credibility, the ALJ noted that Matula's work history reflected an extended period of unemployment prior to her alleged onset date. (Tr. 33). Specifically, the ALJ noted that Matula stopped working in 1986 – not for medical reasons, but to be a stay-at-home

wife and mother. (Tr. 33, 142). Moreover, the ALJ noted that Matula asserted in a disability report that her conditions became severe enough to prevent her from working on January 1, 1997, even though, at that time, she had been out of the workforce for more than ten years. (*Id.*). The ALJ also noted that Matula did not apply for SSI until December 21, 2009, nearly thirteen years after her conditions allegedly began to prevent her from working. (Tr. 33). The ALJ then reasonably concluded that "the combination of the claimant not working in years and alleging various disability onset dates, makes her allegations less credible." (*Id.*). These were appropriate considerations. *See* 20 C.F.R. §416.929(a), (c)(3); *Soc. Sec. Rul.* 96-7p, 1996 WL 374186, at *5-6 (July 2, 1996); *Schaal v. Apfel*, 134 F.3d 496, 502 (2d Cir. 1998) (appropriate for ALJ to consider poor work history when evaluating credibility).

In addition, the ALJ considered the objective medical evidence when evaluating Matula's credibility. Specifically, the ALJ noted that although Matula's x-rays showed degenerative changes of the posterior joints of L4 to S1 and mild sclerotic degenerative change at the SI joint in both sides, they also showed that her alignment, vertebral body height, and disc spaces were normal. (Tr. 33, 170-71). Moreover, the ALJ noted that while Matula's August 2010 lumbar spine MRI showed bulging discs at L4-L5 and L5-S1, with some biforaminal narrowing and contact of the L4 and L5 nerve roots within the foramina, the MRI revealed no spinal stenosis or prevertebral masses. (Tr. 33-34, 404-05). Objective evidence – such as the x-rays and MRI results discussed above – is a "useful indicator" for an ALJ to use when evaluating the credibility of a claimant's symptoms. *See* 20 C.F.R. §416.929(c)(2) ("Objective medical evidence of this type is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms, such as pain, may have on your ability to work.").

In evaluating Matula's credibility, the ALJ also noted that despite Matula's allegations of disabling pain, she engaged in extensive daily activities. Specifically, the ALJ noted that Matula testified that she cooks, washes dishes, cleans her house, does laundry (including carrying a laundry basket), and grocery shops. (Tr. 32, 157, 159-60). The ALJ also considered Matula's representation that she has no trouble caring for herself, can maintain her own personal hygiene (including showering and doing her hair), and can pay bills, handle a savings account, and use a checkbook. (Tr. 32, 158, 160). The ALJ also noted that Matula admittedly engaged in several other activities that belied her allegations of disabling pain, including visiting family and friends, attending church, playing board games and computer games, doing puzzles, driving, caring for her cat, and using a computer. (Tr. 32-33, 63, 158, 161). It was appropriate for the ALJ to consider these facts in assessing Matula's credibility. *See Walters*, 127 F.3d at 532 (an ALJ may consider household and social activities in evaluating the claimant's assertion of pain).

Lastly, the ALJ considered Matula's behavior at the hearing when assessing her credibility. (Tr. 33). Specifically, the ALJ noted that, in contrast to Matula's testimony that she could not sit unless she was "constantly moving," the ALJ did not see her moving much during the 45-minute administrative hearing. (Tr. 33, 63). The ALJ further observed that, on the few occasions when Matula was hurting, "she would stand and then sit right back down," which the ALJ felt was inconsistent with Matula's assertions that she could not sit still because of disabling pain.[4] (*Id.*). Where the ALJ had the opportunity to observe Matula at the hearing, she was in the

---

[4] The ALJ also reasonably concluded that Matula's "use of medications does not suggest the presence of impairments, which are more limiting than found in this decision." (Tr. 34). In reaching this conclusion, the ALJ referenced Matula's testimony that she takes only Motrin (once a day, at bedtime, instead of four times a day, as prescribed) and over-the-counter Tylenol for pain. (Tr. 34, 51). *See Blacha v. Sec'y of Health and Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990) (claimant's "use of only mild medications (aspirin) undercuts complaints of disabling pain…as does his failure to seek treatment…") (internal citations omitted).

best position to assess the credibility of her statements in this regard. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

In sum, the ALJ recognized the duty imposed upon her by the regulations and, in addition to Matula's own subjective complaints, she considered Matula's work history, daily activities, the objective medical evidence, and observations made at the administrative hearing. Thus, the ALJ's credibility determination is supported by substantial evidence and should not be disturbed.

2. *The ALJ's RFC Determination is Supported by Substantial Evidence*

Matula also appears to vaguely challenge the ALJ's conclusion that she retains the RFC to perform a reduced range of sedentary work. (Doc. #9 at 10-12). As set forth above, the ALJ found that Matula is capable of performing sedentary work, so long as she can alternate between sitting and standing at will, with only occasional stooping, crouching, crawling, kneeling, and climbing of ramps and stairs, and no climbing of ladders, ropes, or scaffolds. (Tr. 32-35). This conclusion is supported by the various pieces of evidence discussed above, but in particular by the objective medical evidence, including: (1) the January 2010 x-rays of Matula's lumbar spine, which showed some degenerative changes, but normal alignment, vertebral body height, and disc spaces (Tr. 171); (2) the August 2010 lumbar spine MRI, which showed bulging discs and mild biforaminal narrowing, but no spinal stenosis (Tr. 404-05); and (3) Dr. Schell's September 2010 evaluation, wherein he noted that Matula was neurologically stable and recommended epidural injections and physical therapy, not surgical intervention (Tr. 383). In addition, the ALJ reasonably credited Dr. Tan's April 2011 opinion that Matula could not stand for long periods of time (Tr. 433) by incorporating into her RFC finding the additional limitation that Matula be permitted to sit or stand at will.[5] (Tr. 32). Moreover, the ALJ's conclusion that Matula can

---

[5] Although Matula's motion contains a fairly extensive discussion of the "treating physician

perform sedentary work with restrictions is actually *more* generous than the state agency examiner's conclusion that she could perform light work. (Tr. 32, 78-79). In summary, the ALJ's RFC finding is consistent with the medical and other evidence in the record.

### 3. The ALJ's Hypothetical Questions to the VE were Proper

Finally, Matula argues that the ALJ's hypothetical questions to the VE were insufficient because they did not account for all of her limitations. (Doc. #9 at 12-13). An ALJ may rely on the testimony of a VE to determine whether jobs would be available for an individual who has workplace restrictions. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). However, in order for a VE's testimony in response to a hypothetical question to serve as substantial evidence in support of a conclusion that the claimant can perform other work, the question must accurately portray the claimant's physical and mental impairments. *See Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516 (6th Cir. 2010).

In this case, Matula argues that "the ALJ did not discuss what effect a person having to elevate their feet would be on the types of jobs a person with that requirement would have," and did not incorporate this limitation into the hypothetical questions she posed to the VE. (Doc. #9 at 12). Nowhere in the medical evidence, however, does any doctor impose such a restriction. And, although Matula testified that she tries to "prop" up her feet when they hurt (Tr. 67-68), the ALJ reasonably found her testimony less than fully credible for the reasons set forth above. Similarly, although Matula argues that the ALJ should have found that she would be off task

---

rule," she does not identify any treating physician opinion that the ALJ purportedly failed to properly address. (Doc. #9 at 13-15). Thus, this argument should be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to … put flesh on its bones."). And, indeed, the ALJ gave "significant weight" to Dr. Tan's April 2011 opinion, which is the only treating physician opinion in the record.

approximately 20% of the workday (a limitation the ALJ included in one of the many alternative hypotheticals posed to the VE (Tr. 71)), and included such a limitation in the hypothetical questions posed to the VE (Doc. #9 at 12), Matula identifies no record evidence supporting such a limitation, and the Court could find none. Because the RFC that Matula could perform sedentary work with certain restrictions is supported by the substantial evidence discussed above, and because the ALJ's hypothetical to the VE matched that RFC almost verbatim, (*Cf.* Tr. 32 with Tr. 70-71), the ALJ properly relied on the VE's testimony that Matula, even with those restrictions, could perform a significant number of jobs.

For all of the foregoing reasons, the Court finds that the ALJ's decision that Matula is not disabled is supported by substantial evidence.

### III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [12] be GRANTED, Matula's Motion for Summary Judgment [9] be DENIED, and the ALJ's decision be AFFIRMED.

Dated: November 13, 2013          s/David R. Grand
Ann Arbor, Michigan          DAVID R. GRAND
         United States Magistrate Judge

### REVIEW

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991)*; United States v. Walters*, 638 F.2d 947 (6th Cir.

1981).  Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  A copy of any objection must be served upon this Magistrate Judge. E.D. Mich. LR 72.1(d)(2).

*Note these additional requirements at the direction of Judge Cleland:*

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this Report and Recommendation to which it pertains.  Not later than fourteen days after service of objections, **the non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on November 13, 2013.

                                                s/Felicia M. Moses
                                                FELICIA M. MOSES
                                                Case Manager